IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| S.M., by and through L.M. and<br>K.M.; L.M.; and K.M., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| ATLANTA INDEPENDENT | ) | NO. 1:23-cv-0406-WMR |
| SCHOOL SYSTEM/ATLANTA | ) | |
| INDEPENDENT SCHOOL | ) | |
| DISTRICT aka ATLANTA PUBLIC | ) | |
| SCHOOLS, | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

COME NOW Plaintiffs S.M., by and through his parents L.M. and K.M.;

L.M.; and K.M. and hereby file this complaint against Defendant Atlanta

Independent School District /Atlanta Independent School System, also known as

Atlanta Public Schools (hereinafter referred to as "APS").  Plaintiffs request a jury

trial.

## PARTIES

1.

S.M. (hereinafter referred to as "Scott") is a disabled minor child residing in

Atlanta, Georgia, and he is 12 years old and has, and has a history of having,

autism with related language disability, social skills deficits, social skills anxiety, dysgraphia, and sensory integration disability. Scott's life-long disability of autism substantially limits Scott's major life activities, including but not limited to Scott's ability to socially communicate, socialize, write, care for himself, perform fine motor manual tasks, and access many sensory and or socially stimulating places and activities.

2.

L.M. is Scott's mother, and she resides in Atlanta, Georgia.

3.

K.M. is Scott's father, and he resides in Atlanta, Georgia.

4.

APS is a local government body and municipality operating in Atlanta Georgia, and it receives federal funds and has the capacity to be sued.

## **JURISDICTION AND VENUE**

5.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

6.

Venue is proper because all parties are located or reside in the Northern District of Georgia, Atlanta Division.

## COUNTS I AND II

## APS' UNLAWFUL DISCRIMINATION OF SCOTT

## IN VIOLATION OF THE ADA AS AMENDED AND SECTION 504

### 7.

Plaintiff Scott is a minor child with a qualifying disability under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"), and he incorporates herein the facts set forth in paragraph 1 above.

### 8.

Defendant APS receives federal financial assistance.

### 9.

Scott seeks recovery, as set forth herein, from APS of all damages, the monetary amount to be determined by a jury, caused by APS' intentional discrimination of Scott based solely upon his disabilities in violation of the ADA and Section 504.

### 10.

Plaintiff Scott is a smart, fun, creative, athletic child who loves animals and caring for them, but due to his autism, his social skills and social interactions are that of an elementary school student, yet he is making progress now that he is receiving a non-discriminatory education and placement.

11.

Scott started attending APS when he was 5 years old and in kindergarten.

12.

Since Scott started attending APS, instead of APS providing Scott necessary and reasonable accommodations under Section 504 and the ADA, APS instead punished, suspended from school, restrained physically, segregated, and excluded and isolated Scott solely because of his disabilities.

13.

Due to APS' pattern and practice of intentional discrimination, removal from education, isolation, exclusion, restraints, and refusal to provide Scott necessary and reasonable accommodations, Scott was caused significant anxiety, withdrawal, diminished self-esteem and self-worth, school related anxiety, and severe educational deprivation.

14.

APS' past intentional, retaliatory discrimination based solely upon disability includes the fact that in December 2019, APS insisted Scott, who was then in 3rd grade, be placed at a school that would require Scott ride a school bus 5.5 to 6.5 hours each school day.

15.

Because Scott could not ride a school bus for 5.5 to 6.5 or possibly more hours every school day and because APS insisted upon a placement that was discriminatory in other ways as well, APS provided Scott only 20 hours of time with a teacher from January 30, 2020 through March 26, 2020.

16.

APS' intentional discrimination as set forth above resulted in Scott's parents having to locate a non-discriminatory education for Scott, give proper notice of this to APS, place Scott at Jacob's Ladder at its Hope School, and seek reimbursement from APS under the Individuals with Disabilities Education Act ("IDEA").

17.

After Plaintiffs sought relief under the IDEA by filing a request for a due process hearing on January 21, 2021, the parties herein entered into a written settlement agreement on April 19, 2021.

18.

In this suit, Scott seeks recovery for APS' intentional discrimination from August 1, 2022 forward, yet the prior history set forth herein is relevant to APS' pattern and practice, intent, plan, program, custom, and motive of intentionally discriminating and retaliating against Scott based solely upon his disability.

19.

For the 2022-2023 school year, which began on August 1, 2022, APS unilaterally demanded in April 2022 forward that Scott be placed in one of its "regional autism units" at Sutton Middle School 7th and 8th grade campus.

20.

In APS, some of its middle schools and high schools are separated into two different schools so that the younger students at each setting can attend a school without the older students. For example, at Sutton Middle School, there are two different physical schools – one school campus for 6th graders and one school campus for 7th and 8th graders.

21.

For the 2022-2023 school year, APS demanded that Scott attend Sutton Middle School for 7th and 8th graders when it was appropriate and necessary under Georgia statutory law for Scott to attend 5th grade.

22.

For the 2022-2023 school year, APS demanded that Scott attend 6th grade at a school for 7th and 8th graders despite the fact all private experts involved in his education recommended that Scott attend 5th grade, as he was still behind academically (despite having made progress at the Hope School) and because

placing academic demands on Scott that are too difficult or beyond his level causes him extreme anxiety, as does placing too low level academic demands.

23.

Soctt is physically very small (less than 5 percentile), his social skills are severely delayed, and he withdraws when in class with students who are much older and larger and socially adept than he is as he was severely bullied in APS by his classmates and due to his autism, his social skills are impaired..

24.

During the 2022-2023 school year, APS intentionally discriminated against Scott by excluding him totally from 5th grade placement.

25.

During the 2022-2023 school year, APS intentionally discriminated against Scott by demanding he attend a school for 7th and 8th grade students, thereby totally isolating and excluding him from 5th and from 6th grade students based solely upon his disability.  APS provides to all APS students in 6th grade in the Sutton school zone the right to attend a school for younger students who are in 6th grade but APS denied this same program, activity, and service to Scott based solely upon his disability.

26.

During the 2022-2023 school year, APS intentionally discriminated against Scott by totally isolating and excluding him from attending school with non-disabled students his age as well as non-disabled students attending 5th grade.

27.

APS' demand that Scott attend a school for older students in 7th and 8th grades when he was only ready to go to 5th grade academically was disparate treatment based upon Scott's disability and it was not facially neutral because it discriminated against Scott based upon his disability of autism.

28.

APS' demand that Scott attend a school for older students in 7th and 8th grades when he was only ready to go to 5th grade academically was the result of APS' intentional refusal to provide Scott a reasonable accommodation of programming at his age or grade level so he could attend a school for his grade level or his age level.

29.

The benefit, program, and activity APS excluded Scott from is not just an appropriate education or education in general but the benefit and right of attending a school for younger students, attending a school for same age students, attending a

school for grade level students, and accessing all extracurricular, sports, and other activities with peers who are the same age or the same grade level.

30.

During the 2022-2023 school year, APS intentionally discriminated against Scott by totally excluding and isolating him from all access to 5th and 6th grade connections, specials, and elective classes (such as band, chorus, physical education, art, etc.) and 5th and 6th grade events (such as pep rallies, spirit week, book fair, picnics, etc.) based solely upon Scott's disability.

31.

APS provides students who are in 5th grade or 6th grade who do not have autism to attend a school for 5th or 6th graders and to access all the activities of those schools as well as access to the general education curriculum for those grade levels, but APS denied this benefit to Scott based solely upon his disability.

32.

During the 2022-2023 school year forward, APS intentionally discriminated against Scott based solely upon his disability by totally excluding and isolating him from participation in intramural sports, extracurricular activities, and regular education programming with his same age peers and with his same grade level peers.

33.

For the 2023-2024 school year, which is the current school year, Scott is in 6th grade, and APS is still intentionally discriminating against Scott by excluding and isolating Scott completely from attending a school for 6th grade students and from participating in 6th grade sports, connections, specials, electives, and school activities, as well as social interactions with students in 6th grade.

34.

For the 2023-2024 school year, APS is intentionally discriminating against Scott by insisting Scott be placed in one of APS' regional autism units at Sutton Middle School 7th and 8th grade campus even though Scott is in 6th grade in all regular education classes accessing grade level curriculum and standards, making friends, progressing, and not in need of APS' insisted upon self-contained, segregated, regional autism unit in a 7th and 8th grade school where Scott is denied access to the benefits set forth in paragraph 33 above.

35.

For the 2022-2023 and 2023-2024 school years, APS was and still is discriminating against Scott by demanding he be placed in APS' segregated regional autism unit where most, if not all, of the children have significant cognitive impairment such that they cannot access statewide assessments, and

where many, if not most, cannot communicate or access academics beyond a pre-kindergarten to perhaps 1st grade level.

36.

APS is still discriminating intentionally against Scott due solely to his disability by demanding he be placed in a school for 7th and 8th grade students when he is in 6th grade and by totally excluding him from any activities, programming, extracurricular events, sports, intramural sports participation, and other benefits provided by APS to 6th grade students, including 6th grade general education academics.

37.

APS has high schools that are also like Sutton Middle School, meaning APS has high schools that are split into two different school campuses – one for younger 9th grade students and one for 10th to 12th graders such that Scott is entitled to injunctive relief prohibiting  APS from excluding and isolating Scott in the future from a school that does not provide Scott education, activities, services, and programming at his grade level.

38.

APS's policy, practice, and custom is that it can place disabled students, such as Scott, at any school located anywhere in Atlanta because they are disabled,

and this is discrimination based solely upon disability, and APS must be enjoined in the future from doing this to Scott.

39.

Top APS administrators with sole decision-making authority, such its special education director (E. Ford) and special education coordinator (S. Fitts), and APS' attorneys have stated multiple times in this matter and involving many other students that APS can place a disabled child at any APS school it wishes at any time without any involvement of the child's parents, including if such requires a 5.5 plus hour a day bus ride or a school that is not designed for the child's grade level, and APS must be enjoined from this discriminatory policy, practice, and custom, as it has harmed Scott and continues to do so.

40.

During the 2022-2023 and 2023-2024 school years, APS discriminated against Scott and continues to do so by isolating him from any grade level general education by demanding he attend a school for 7th and 8th grade students.

41.

During the 2022-2023 and 2023-2024 school years, APS intentionally discriminated and continues to intentionally discriminate against Scott by isolating and excluding him from grade level state standards by demanding he attend a school for 7th and 8th grade students in APS' regional autism unit.

42.

During the 2022-2023 and 2023-2024 school years, APS intentionally discriminated and continues to discriminate against Scott by insisting that if he wants to take physical education, art, music, chorus, band, and any other such classes, he can only do so in a 7th grade, 8th grade, or 7th and 8th grade class with peers who are all older than he is and who are all in higher grades than Scott.

43.

APS has indicated it has not and will not back down from or change its policy and practice that it can place a disabled student, such as Scott, in any school at any time it wishes and totally without parent involvement, solely because of disability. Thus, this intentional discrimination is very capable of being repeated against Scott while at the same time very capable of evading review because by the time a due process hearing or federal court case reaches a final decision, Scott's education plan or placement could terminate or Scott's parents be forced yet again to have to themselves educate Scott and seek reimbursement and by the time that litigation ended in a judgment, Scott could be graduated.

44.

During the 2022-2023 and 2023-2024 school years, APS intentionally discriminated against Scott and continues to do so by insisting that Scott go into an APS segregated regional autism unit with very low functioning students who take

the Georgia Alternative Assessment ("GAA"), which is designed for students with the most severe cognitive impairments, and where the curriculum is not aligned to the State standards at Scott's grade level or close thereto and involves a lot of repetitive video watching and repetitive low level activities.

45.

As set forth above, since February 2022 forward and ongoing, APS is intentionally discriminating against Scott because he is a child with autism, and APS is doing so in three different ways, which include 1) APS refusing to provide Scott reasonable, necessary accommodations, 2) APS disparately treating Scott, and 3) APS totally isolating and excluding Scott.

46.

Because APS has intentionally discriminated against Scott based solely upon his disability and because APS continues to do so, Scott is entitled to recover monetary damages for his injuries in an amount to be determined by a jury and to injunctive relief.

47.

Scott and his parents are entitled to recovery of monetary damages for Plaintiffs having to pay for Scott to participate in and access age-level or grade-level activities and events, such as sports, PE activities, and extracurricular activities, that APS denied and continues to deny to Scott because of his disability.

48.

Plaintiffs are also entitled to recover their lost income and lost interest for having to provide Scott a non-discriminatory education, transport him to and from school, and pay for all education in a non-discriminatory placement.

49.

Plaintiffs prevailed in their hearing request under the IDEA, and APS reimbursed Plaintiffs pursuant to Final Decision $77,566.56.  All administrative remedies have been exhausted, and APS has now appealed the Final Decision and seeks not to have to reimburse Plaintiffs under the IDEA. Plaintiffs seek herein $77,566.56, not as reimbursement under the IDEA in this suit, but as monetary damages for APS' intentional discrimination based solely upon disability (as well as intentional retaliation, denial of equal protection of the laws, and bad faith breach of contract), because those are the monetary damages to date that Plaintiffs incurred to have to provide Scott a nondiscriminatory education.  Plaintiffs seek such costs going forward as well because APS continues to discriminate and retaliate against Scott and his parents.

50.

Recovery of compensatory damages for discrimination is not relief that is provided under the IDEA, and that is what Plaintiffs are seeking herein.

51.

A local educational agency can provide a disabled child an appropriate education under the IDEA, but that education can still be discriminatory in violation of the ADA and Section 504.  In this case, APS' education was not just inappropriate, it was discriminatory and retaliatory and unilaterally and in bad faith pre-planned by APS in violation of the parties' settlement agreement.

52.

Scott is also entitled to all damages for being totally excluded from the benefits, programs, activities, and services as set forth above, and Plaintiffs are entitled to injunctive relief preventing APS from discriminating against Scott as set forth herein currently and going forward.

## COUNTS III AND IV

## APS' UNLAWFUL RETALIATION OF PLAINTIFFS

## IN VIOLATION OF THE ADA AS AMENDED AND SECTION 504

53.

Plaintiffs incorporate paragraphs 1, 7, and 8 as if fully set forth herein.

54.

APS has a long history of retaliating against, harassing, intimidating, and interfering with Scott from exercising his rights under the ADA and Section 504.

16

55.

APS has a history of retaliating against, harassing, intimidating, and interfering with Scott's parents, Plaintiffs K.M. and L.M., because they have attempted to aid Scott in enjoying his rights under the ADA and Section 504 and because they have advocated for him to be free from discrimination based solely upon disability.

56.

In 2019, Scott's parents were advocating for Scott to be free from discrimination based upon disability by attending meetings and requesting services and supports from APS, and in violation of the anti-retaliation provisions of the ADA and Section 504, APS staff started to retaliate first against Scott by mocking him, calling him names, allowing students to bully Scott due to his disabilities, removing him from class, removing him from school, suspending him, placing him in an isolation room, intentionally upsetting and dysregulating him, and calling the police on Scott when he was just in third grade.

57.

In 2019, APS staff harassed, retaliated against, intimidated, coerced, and threatened Scott by violently restraining him in violation of the Georgia Department of Education regulations when Scott was not a danger to himself or others and by using prone restraint on Scott so that he could not breathe.

58.

Scott's parents were so concerned about the violent, unlawful restraints of Scott by APS staff, Scott's parents sought warrant applications against three APS staff, but Scott's parents proceeded *pro se*, the staff did not testify, and since Scott's parents were not at the school at the time of the restraints and Scott could not testify given his age and the trauma he suffered, the warrant applications were denied on September 26, 2019.

59.

On December 4, 2019, APS staff continued to retaliate against, threaten, coerce, harass, and intimidate Scott and his parents by restraining Scott so violently and so improperly that Scott could not breathe, causing him to start vomiting, and APS had to call an ambulance to the school from Grady Hospital to provide treatment to Scott.

60.

In December 2019, APS staff continued to retaliate against, threaten, coerce, harass, and intimidate Scott and his parents by insisting Scott had to be placed in an APS school so far from his home that Scott would be required to ride a school bus 5.5 to 6.5 hours each school day (or 27.5 to 37.5 hours each school week).

61.

On December 4, 2019, APS staff continued to retaliate against, threaten, coerce, harass, and intimidate Scott and his parents by insisting Scott ride a school bus for 2 hours and 15 minutes each morning to school and then ride a school bus 4 hours and 30 minutes from school to home.

62.

APS' intentional discrimination and retaliation as set forth herein required Scott's parents to have to place Scott in a private school, retain an attorney, and request a hearing under the IDEA, which was settled.

63.

Because of Scott's parents' ongoing advocacy for Scott and because Scott and this parents were attempting for Scott to exercise his rights under the ADA and Section 504, in April 2022 forward, APS once again started to retaliate against, threaten, and intimidate Plaintiffs and interfere with Plaintiffs' rights under the ADA and Section 504 and the settlement agreement reached from the prior hearing.

64.

Because Scott's parents had sought supports and services in a safe, appropriate setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights

to be free from discrimination based upon disability, in 2022 forward, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by not allowing Scott's parents to participate in the decision-making process for Scott, demanding Scott could only attend an APS school, refusing to consider a non-discriminatory educational setting for Scott, refusing to allow Scott to attend 5th grade, refusing to allow Scott to attend a school for his same-aged peers, refusing consideration of any proper setting, refusing to even consider alternative accommodations from an APS brick and mortar school placement, and by relegating Scott into a setting that denied him access to the general education State standards, access to any meaningful education, and access to an education in a setting Scott, due to his disabilities, could even access.

65.

Because Scott's parents had sought supports and services in a safe, appropriate setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights to be free from discrimination based upon disability, in 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by refusing to allow Scott to attend a 5th or 6th grade school and insisting Scott attend a 7th and 8th grade school when he was going into 5th grade and when his social skills and physical size made him appear to be a 3rd or 4th grader.

66.

Because Scott's parents had sought supports and services in a safe, appropriate setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights to be free from discrimination based upon disability, in 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by demanding Scott be isolated and totally excluded from being educated with students his age and with students in his grade level.

67.

Because Scott's parents had sought supports and services in a safe, appropriate setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights to be free from discrimination based upon disability, in 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by demanding Scott be segregated for the majority of the school day from all other students except those with significant cognitive impairments and severe autism in a class where videos were watched repeatedly and pre-kindergarten to kindergarten math was briefly reviewed.

68.

Because Scott's parents had sought supports and services in a safe, appropriate setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights to be free from discrimination based upon disability, in 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by not allowing Scott to participate in sports, extracurricular activities, specials, connections, school events with his same age peers or with his grade level peers.

69.

Because Scott's parents had sought supports and services in a safe, appropriate setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scot to exercise his rights to be free from discrimination based upon disability, in 2022, APS violated intentionally the anti-retaliation provisions of the ADA and Section 504 by refusing to provide Scott access to the Georgia academic standards except at the pre-kindergarten to perhaps 1st grade level.

70.

Because Scott's parents had sought supports and services in a safe, appropriate setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scot to exercise his rights to

be free from discrimination based upon disability, in 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by insisting Scott be placed in an overwhelming, loud, chaotic, large school environment with a modified curriculum.

71.

Because Scott's parents had sought supports and services in a safe, appropriate setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights to be free from discrimination based upon disability, in 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by denying Scott an education track to a high school diploma at the age of 11, in violation of his rights and equal access.

72.

When APS evaluated Scott's intelligence, APS reported that Scott had an overall intelligence quotient of 117 standard score, placing him in the above-average range of intelligence, but to punish, threaten, coerce, and intimidate Scott's parents so they would remove Scott from APS and not seek from APS non-discriminatory services, programs, activities, and benefits for Scott and so Scott would not attend APS, APS demanded from April 2022 going forward that Scott had to be segregated to a setting with very low functioning students who could not

add simple single digit numbers and many, if not all, could not access regular

education academics but on a very low pre-kindergarten to kindergarten level, even

if that.

73.

APS continues to retaliate against, harass, intimidate, coerce, and threaten

Scott and his parents and interfere with the exercise of their rights under the ADA

and Section 504 by not educating Scott, totally excluding him from any education

provided by APS at the time of the filing of the original complaint, not allowing

him to access grade level curriculum, not allowing him to attend a 6th grade school

when he is in 6th grade, and not allowing him to access sports, extracurricular

activities, specials, connections, a school for 6th graders, and, *inter alia*, programs

and events for 6th grade students.

74.

APS continues to retaliate against, harass, intimidate, coerce, and threaten

Scott and his parents and interfere with the exercise of their rights under the ADA

and Section 504 by taking and continuing to take the actions set forth in paragraphs

38-45 and 64-73 above when APS is fully informed that Scott is attending all

regular education classes, is successfully accessing grade level academics, is

accessing and performing well in the general education classes, is making friends

with students without autism, having no behavioral issues, playing sports with his

grade level peers, and accessing the benefits of education that APS refuses to provide to Scott by trying to force him into a harmful, dysregulating, low functioning, segregated class for children with significant cognitive impairments and severe autism at a school for 7th and 8th grade students.

75.

APS' violation of the anti-retaliation provisions of the ADA and Section 504 have harmed and continue to harm Plaintiffs, who are entitled to recover from APS monetary damages, in an amount to be determined by a jury.  Damages sought for APS' retaliation against Plaintiffs include those set forth in paragraphs 47-52, and Plaintiffs seek an injunction preventing APS from retaliating against the Plaintiffs currently and going forward.

## COUNT V

## APS' DENIAL OF EQUAL PROTECTION UNDER THE LAW

76.

Since 2022 forward, APS has and still is intentionally denying Scott his right to equal protection of the law pursuant to the Fourteenth Amendment of the U.S. Constitution.

77.

Because Scott is a child with autism, APS intentionally refuses to treat Scott in the same manner as non-disabled students and as other disabled students who do

not have autism by refusing to allow him to attend a grade-level school, to access the grade level standards for his current grade, to participate in activities and programs for students in his grade, and to not be segregated with very low functioning students to watch repetitive videos in a highly modified curriculum not designed to result in the attainment of a high school diploma.

78.

Because Scott is a child with autism and his parents advocated for him under the ADA, IDEA, and Section 504, APS intentionally refuses as a matter of ongoing practice and custom to treat Scott in the same manner as non-disabled students and as other disabled students who do not have autism by refusing to allow him to attend a school for his grade level, to access the grade-level standards for his grade, to participate in sports, activities, classes, and programs for students in his grade, and to not be segregated with very low functioning students to watch repetitive videos in a highly modified curriculum not designed to result in the attainment of a high school diploma.

79.

APS provides to all non-disabled students and disabled students who do not have autism to attend a grade-level school, but APS has a long standing, consistently implemented unwritten policy, practice, and custom that it can and does place Scott and other children with autism at any school at any location at any

time without any input from Scott's or other autistic students' parents. APS

consistently implements this policy and practice through those authorized to do so

for APS, that is, APS' director of special education and counsel, including its

deputy general counsel, L. Warco and other counsel.

80.

Scott has a constitutional right to public education and a Georgia statutory

right to be placed in a grade, class, and program that is based upon his academic

achievement and the grade, class, and program that is most likely to ensure Scott

succeed and progress to the next grade level of academic achievement, but APS

denied this, continues to deny this, and plans going forward to deny this to Scott

without due process of the law because he is a student with autism and his parents

have advocated for him. At the recorded IEP team meeting and the hearing APS

admitted it is APS policy to not place student with disabilities such as Scott based

on academic level, which is a direct violation of Georgia statutory education

pursuant to Georgia students' constitutional right to education.

81.

Scott, like non-disabled peers and most disabled peers, can access and

benefit from a regular education program and class in 6th grade school setting, and

he is doing so privately, but APS, through those it has authorized to make such

policy and practices, mandates because Scott has autism and his parents have

27

advocated for him, that Scott will be denied those rights APS provides to similarly situated non-disabled peers and to similarly situated disabled peers who can access a regular education program and class in 6th grade.

82.

Scott, like disabled-students and most disabled peers, can access and benefit from a regular education program and class in 6th grade in a 6th grade school setting, and he is doing so privately, but APS, through its decision makers Ford and legal counsel, mandates because Scott is a student with autism and his parents have advocated for him, that Scott will not be allowed by APS to access a regular education program and class in 6th grade or subsequent grade level regular education class going forward.

83.

Because Scott is a child with autism and his parents advocated for him under the ADA and Section 504, APS has since April 2022 and is still refusing to provide Scott with equal access to education, grade level placement, a school for his grade level, access to the regular education program that is provided to all other students, both non-disabled and disabled students who can access such, in violation of the Fourteenth Amendment to the U.S. Constitution, giving Scott a cause of action pursuant to 42 U.S.C. § 1983 against APS, and Scott is entitled to recover his damages caused by APS in an amount to be determined by a jury and including the

damages set forth in paragraphs 47-52 above.  Plaintiffs seek a jury to determine the damages APS has caused Scott.

84.

APS continues to violate Scott's right to access regular education in a non-modified curriculum with peers who are not mostly, if not all, significantly cognitively impaired in a highly segregated setting despite the fact APS is fully informed that Scott can access regular education at the 6th grade level, has been doing so, is very successful in 6th grade general education curriculum, has no behavioral issues at school, is making friends with students without autism, and is participating in school extracurricular activities, sports, events, and programs successfully.

85.

APS insists by way of its long-standing policy, practice, and procedure that when placing disabled students such as Scott, APS can pick any school it wishes, no matter where located, how long the bus ride is, how much education the student does not receive, no matter what grade levels are taught at said school, even when the disabled child's, like Scott's, grade level is not provided at that school, and that APS can do this to disabled students with autism like Scott any time and as many times as it wishes.  APS has authorized its director of special education and its attorneys to make that policy, practice, and custom, and they have done so with

29

many students and continue to do so, effectively denying Scott and other students with disabilities any education.

86.

APS's director of special education and or its legal counsel have made it clear in many matters and with many disabled students that APS intends to continue its policy and practice of denying to disabled students, including Scott, the right to attend his home school or a school offering his grade level or a general education program, if it so elects, despite APS providing this right to all other non-disabled students and all disabled students who can so do, as is true for Scott.

87.

While discovery in this case will provide further evidence, APS has twice denied Scott the right to attend his home school or a school with his grade level, to be provided transportation that is provided to all other students, and to access general education, and it has multiple times denied disabled students their right to attend a school that is close to their home or that is their home school and demands that APS can place a disabled child at any school it elects, even if that school is harmful or not designed to provide appropriate public education to the child, as APS did to S.B., twice to S.M., and as it has to many other disabled students.

88.

APS has admitted through top special education administrators (the director of special education and a special education coordinator), one in a recorded IEP meeting and both at a hearing while testifying under oath that APS can place a disabled child with autism anywhere it wishes, and APS, through its attorneys, repeatedly state that location of the school or the actual school does not matter when APS "offers" an education to a disabled child with autism, but APS does not do this to all other students who can access grade level education in a grade level school, which Scott can do.

89.

Because Scott is and will remain a child with autism and because Scott's parents continue to advocate for him, APS can repeat its denial of equal protection under the law any time it wishes as many times as it wishes, such that Scott is entitled to injunctive relief against APS for the above stated denial of equal protection as well as recovery of monetary damages.

## COUNT VI

## APS' BREACH OF CONTRACT

90.

APS breached its settlement agreement it entered into with Plaintiffs in April 2021 and continues to do so, and Plaintiffs cause of action for breach of contract is properly filed herein because the Court has supplemental jurisdiction.

91.

In April 2021, Plaintiffs and APS settled a due process hearing request and complaint submitted by Plaintiffs pursuant to the IDEA, executing a written agreement.

92.

The written settlement agreement the parties entered into in April 2021 involved Scott's past, present, and future education.

93.

Pursuant to said settlement agreement, APS had an explicit contractual obligation to cooperate in good faith to prepare an Individualized Education Program ("IEP") for Scott should Plaintiffs wish to obtain educational services for Scott from APS, including either services at one of APS' public schools or private services at public expense.

94.

In Georgia, every contract has an implied duty for those entering into the contract to act in good faith and deal fairly.

95.

When Scott's parents notified APS that they wanted APS to provide either privately or by APS educational services to Scott, with said services starting August 1, 2022, APS breached in bad faith the settlement agreement with Plaintiffs from the very beginning.

96.

On February 18, 2022, Ms. Deanna Rogers, APS' Remediation and Support Coordinator, sent an email to Scott's father, K.M., stating that "[p]er the agreement, you are required to notify Ms. Ford by March 15, 2022, if you plan to re-enroll Scott with the District for next school year, so that we have time to prepare an IEP for his return.  If you are asking for that process to begin sooner, that is okay, we just need written confirmation that you plan to re-enroll Scott. Once we are in receipt of this, you will be contacted with next steps within 5 business days."

97.

Scott's parents were not required to re-enroll Scott in APS for the parties to cooperate in good faith in the preparation of an IEP for Scott for the 2022-2023

school year.  The settlement agreement provided funding for Scott to obtain private

education through July 31, 2022, and APS had informed Scott's parents that APS

had no duty to provide Scott education prior to that.

98.

Scott's father replied to the email referenced in paragraph 75 above,

explaining that for the time being, Scott's parents planned to continue Scott at the

private school, as Scott could not receive educational services provided from APS

until August 1, 2022, and the settlement terms provided for Scott to be educated

through July 31, 2022 at The Hope School.

99.

Scott's father added in replying to the email set forth in paragraph 98 above

that an IEP meeting was needed per the agreement to prepare an IEP in "good

faith" "to assess options and, if applicable, secure more funding."

100.

APS misrepresented and continues to misrepresent Scott's father's reply set

forth in paragraphs 98-99, stating Plaintiffs requested more funding, which is an

intentional misrepresentation.  APS also intentionally misrepresented and

continues to misrepresent that K.M. stated in his email in the context of the 2022-

2023 school year, Plaintiffs intended to keep Scott enrolled at the private school.

That too is a knowing falsehood, as the reply stated only that the family intended to

34

keep Scott at the private school for the time being until a plan for the upcoming

year could be devised.

101.

Under the settlement agreement, Scott was not entitled to any educational

program from APS until August 1, 2022.  Under the agreement, Scott was entitled

to an IEP prepared in good faith for the 2022-2023 school year.

102.

APS and its staff, including Ms. Fitts, Ms. Thomas, and Ms. Ford (the

director of special education with sole decision making authority for APS),

determined prior to the IEP meeting and preparation of the IEP that Scott's only

placement option for the IEP was an APS brick and mortar school, denying Scott's

parents' legal right to be a part of the placement decision and violating APS' duty

to prepare in good faith with Scott's parents an IEP for Scott.

103.

APS illegally predetermined Scott's IEP placement in violation of the IDEA

and its duty of good faith and fair dealing, and the administrative law judge

("ALJ") concluded that APS violated the IDEA due to its predetermination and

denial of parent participation in preparing said IEP in the Final Decision entered by

the ALJ on December 8, 2023.

104.

APS and its staff, including Ms. Fitts, Ms. Thomas, and Ms. Ford, determined prior to the IEP meeting and preparation of the IEP for Scott that Scott's only placement option for the IEP was a placement in APS' regional autism unit at Sutton Middle School 7th and 8th grade school, thereby denying Scott's parents' legal right to be a part of the placement decision and violating APS' duty to prepare in good faith with Scott's parents an IEP for Scott.

105.

APS and its staff, including Ms. Fitts, Ms. Thomas, and Ms. Ford, determined prior to the IEP meeting and preparation of the IEP for Scott that Scott's only placement option for the IEP was to be placed in 6th grade but at a school for general education students in 7th and 8th grades, violating the law and APS' duty to prepare with the family an IEP in good faith.

106.

APS refused to consider at the audio recorded IEP meeting the continuum of placements, stating a private day school was not an IEP placement option for Scott. This was a violation of APS' legal duties and a direct violation of APS' contractual obligation to prepare in good faith with Scott's parents an IEP for Scott for the 2022-2023 school year.

107.

At the IEP meeting, APS violated its agreement to prepare with Scott's parents in good faith an IEP for Scott by claiming that grade level placement was dependent on APS' retention policy and not upon academic achievement and that it was not an IEP decision.

108.

APS acted in bad faith when it represented to Scott's family during the preparation of an IEP for Scott that APS had to refer to APS' retention policy before it could consider placing Scott in 5th grade in his IEP.

109.

APS acted in bad faith when during the preparation of an IEP for Scott, APS staff told Scott's family that APS would have to do a "planning worksheet" to consider which placement – an autism class in 5th grade versus an autism regional unit in 6th grade at a 7th and 8th grade school – would be better, as that was not true, and APS never conducted a planning worksheet for Scott.

110.

APS acted in bad faith when it represented to Scott's parents at the IEP meeting that to consider IEP placement of Scott in 5th grade APS staff would have to look at planning worksheets, which it did not have to do and which it did not do.

111.

APS breached its contract with Plaintiffs and its duty to prepare in good faith an IEP for Scott for the 2022-2023 school year when it stated at the IEP meeting a private school was not on APS' continuum of placements in Scott's IEP.

112.

APS admitted that the only way Scott could receive educational services from APS after the agreement was for Scott to re-enroll in APS and return to an APS school when the agreement required private placement consideration by the IEP team and the law required that as well.

113.

APS breached its contract to prepare in good faith an IEP for Scott when APS insisted that Scott attend a low functioning, segregated APS "regional autism unit" for students with significant cognitive impairments on a modified curriculum with no access to any core curriculum education above kindergarten, maybe first grade level, and with students who were so impaired they could not take State standardized assessments or add single digit numbers.

114.

APS acted in bad faith in breach of the settlement agreement when APS claimed after the fact that at the recorded IEP meeting, APS discussed conducting a psychological evaluation of Scott, which it did not do at the IEP meeting.

115.

APS acted in bad faith when APS claimed it wanted to conduct an IEP meeting after the one held on April 25, 2022 to allegedly consider summer services when APS stated it would not provide Scott any services until August 1, 2022.

116.

APS acted in bad faith in the preparation of Scott's IEP for the 2022-2023 school year by withholding critical information from Scott's parents at the IEP meeting, such as withholding the fact the regional autism unit did not offer access to State grade level standards, the program was modified, the students were very cognitively impaired, there were severe behaviors from students in the classroom, and other such critical information.

117.

APS acted and continues to act in bad faith by refusing to consider the continuum of placements for Scott in an IEP.

118.

APS has acted in bad faith when it misrepresented that APS "has demonstrated that [Scott] is capable of making progress on his IEP goals and objectives through the placement offered by the District."

119.

APS acted in bad faith when it claimed placement of Scott in APS' regional autism unit at Sutton Middle School 7th and 8th grade campus was the least restrictive environment for Scott, as APS continues to assert yet APS knows Scott is attending all regular education classes on grade level and making educational progress in areas including academic, emotional, social, behavioral, physical, and other areas.

120.

APS acted and continues to act in bad faith by refusing to prepare in good faith in compliance with Scott's parents' rights and the law an IEP for Scott, retaliating against Scott and his parents, taking actions to force Scott's parents to have to pay for Scott's education.

121.

APS breached its contract by adopting and implementing a policy, practice, and custom that when a student with disabilities seeks educational services after a settlement agreement with APS, the only option offered to the student is for the student to return to an APS brick and mortar school of APS' choice, otherwise totally excluding the disabled child from an education, as APS did in this case and has done with other disabled students.

122.

After the IEP meeting conducted in April 2022, in continuation of its bad faith, APS never offered an IEP meeting for Scott to discuss placing him in 5th grade.

123.

After the IEP meeting conducted in April 2022, in continuation of its bad faith, APS said it would provide an IEP meeting to Scott but that the placement would be in its regional autism unit at Sutton 7th and 8th grade campus.  APS again predetermining placement was a violation of the IDEA, done in bad faith and violation of the settlement agreement.

124.

Plaintiffs are entitled to a jury decision that APS breached its settlement agreement and its conduct in complying with the settlement agreement and a jury determination of the amount of damages Plaintiffs are entitled to receive for APS' intentional, bad faith dealings, including the damages set forth in paragraphs 47-52, 75, and 83.

**COUNT VII**

**RECOVERY OF COSTS AND FEES FOR BAD FAITH**

125.

Plaintiffs incorporate paragraphs 90 to 124 as if fully set forth herein.

126.

Pursuant to O.C.G.A. § 13-6-11 and common law, Plaintiffs are entitled to recover their expenses of litigation, including their attorney's fees, in having to bring this lawsuit because APS has acted in bad faith as set forth in Count VI.

127.

Pursuant to O.C.G.A. § 13-6-11 and common law, Plaintiffs are entitled to recover their expenses of litigation, including their attorney's fees, because APS has been stubbornly litigious and caused Plaintiffs' unnecessary trouble and expense, requiring this lawsuit be filed when APS unilaterally made IEP decisions regarding preparation of the IEP and excluded Plaintiffs from participating in the IEP preparation process and in exercising their rights in the IEP preparation process.

128.

Pursuant to O.C.G.A. § 13-6-11 and common law, Plaintiffs are entitled to recover their expenses of litigation, including attorney's fees, in an amount to be determined by a jury.

## **COUNT VIII**

## **RECOVERY OF COSTS AND FEES UNDER THE IDEA**

129.

Plaintiffs incorporate paragraphs 49 and 103 as if fully set forth herein.

130.

Plaintiffs requested a due process hearing on March 31, 2023, asserting, *inter alia,* APS denied Scott a free appropriate public education procedurally and substantively.

131.

Plaintiffs prevailed in their hearing request under the IDEA, and APS reimbursed Plaintiffs pursuant to Final Decision $77,566.56.

132.

Pursuant to the IDEA, prevailing parents are allowed to recovery fees and cost for due process hearings and recovery of said fees and costs.

133.

Plaintiffs are prevailing parents regarding their March 2023 IDEA hearing request.

134.

APS has appealed the Final Decision, but its appeal lacks merit and is further harassment and coercion against Plaintiffs in violation of the ADA and Section 504.

135.

Plaintiffs will file a counter claim against APS in the suit it has now filed appealing the Final Decision, but to the extent APS asserts a claim for recovery of

fees and costs is a compulsory counterclaim in this action, Plaintiffs assert their right to receive a court award of their fees and costs pursuant to the IDEA in this action.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs respectfully pray for the following relief:

1) A jury trial be had on Scott's ADA and Section 504 discrimination and equal protection under the law claims;

2) A jury trial be had on Plaintiffs ADA and Section 504 retaliation, breach of contract claims, and claim for recovery of costs of litigation pursuant to O.C.G.A. § 13-6-11 and common law;

3) That the Court enter an order enjoining APS from isolating and excluding Scott from attendance at a school where his grade level is taught the regular education curriculum and State standards at his grade level and where Scott is given access to State academic standards for Scott's grade level and not relegated to a program for severely cognitively impaired students;

4) That Plaintiffs be awarded their fees and cost as prevailing parents under the IDEA;

5) That Plaintiffs be awarded by this Court their attorney's fees and litigation expenses and costs associated with this matter pursuant to the

ADA, Section 504, the Fourteenth Amendment to the U.S. Constitution, and 42 U.S.C. § 1983; and

6) That Plaintiffs be awarded all other and further relief as the Court deems just and appropriate.

This the 22nd day of March 2024.


 /s/ Chris E. Vance
Chris E. Vance
Ga. Bar No. 724199
Counsel for Plaintiffs


**CHRIS E. VANCE, P.C.**
Suite 100, 2415 Oak Grove Valley Road
Atlanta, GA 30345
Tel:  (404) 320-6672
Fax: (404) 320-3412
Cell:  (404) 313-3800
chris@chrisvancepc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served Defendant through its counsel with a copy

of this Amended Complaint this 22nd day of March 2024.


 */s/ Chris E. Vance*
Chris E. Vance
Ga. Bar No. 724199
Counsel for Plaintiffs


**CHRIS E. VANCE, P.C.**
Suite 100, 2415 Oak Grove Valley Road
Atlanta, GA 30345
Tel:  (404) 320-6672
Fax: (404) 320-3412
Cell:  (404) 313-3800
chris@chrisvancepc.com